# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
:
ZUMA PRESS, INC., ACTION SPORTS : **ORDER AND OPINION**
PHOTOGRAPHY, INC., TIYU (BEIJING) : **GRANTING DEFENDANT'S**
CULTURE MEDIA CO. LTD., MANNY : **MOTION FOR SUMMARY**
FLORES, ANDREW DIEB, CHRISTOPHER : **JUDGMENT**
SZAGOLA, LOUIS LOPEZ, CHARLES BAUS, :
DUNCAN WILLIAMS, ROBERT BACKMAN, :
JOHN MIDDLEBROOK, and ANTHONY : 16 Civ. 6110 (AKH)
BARHAM, :
: 17 Civ. 5832 (AKH)
Plaintiffs, :
-against- :
:
GETTY IMAGES (US), INC., :
:
Defendant. :
:
-------------------------------------------------------------- X

ALVIN K. HELLERSTEIN, U.S.D.J.:

Defendant Getty Images (US), Inc. ("Getty" or "Defendant") renews its motion for summary judgment, arguing that its allegedly infringing use of Plaintiffs' photographs (the "Accused Images") was authorized.[1] Plaintiffs, comprised of Zuma Press, Inc. ("Zuma"), several individual photographers, and two photographic licensing agencies, move for partial summary judgment on the ownership and copying elements of their copyright infringement claims. Thus, both sides move for summary judgment. For the reasons stated below, Defendant's motion is granted and Plaintiffs' motion is denied.

---

[1] I have not previously ruled on Getty's authorization defense. On October 4, 2018, I granted summary judgment to Getty on both of Plaintiffs' claims: (i) copyright infringement under 17 U.S.C. § 501, and (ii) violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202 (ECF No. 172). Because I dismissed the copyright infringement claim on equitable estoppel grounds, I did not reach Getty's other defenses to that claim. On reconsideration, I held that issues of material fact precluded summary judgment on Getty's equitable estoppel defense and therefore reinstated Plaintiffs' copyright infringement claim (January 24, 2019 Order and Opinion, ECF No. 189). I declined to reconsider the dismissal of Plaintiffs' DMCA claim.

## DISCUSSION

Holding a valid license "immunizes the licensee from a charge of copyright infringement, provided that the licensee uses the copyright as agreed with the licensor." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018) (quoting *Davis v. Blige*, 505 F.3d 90, 100 (2d Cir. 2007)). Getty argues that it was such a valid licensee. I rule in favor of Getty, and dismiss the complaint. The Court assumes the parties' familiarity with the facts as set out in the Court's October 4, 2018 Order and Opinion, and as supplemented in its January 24, 2019 Order and Opinion. The following discussion traces the flow of license authority from Zuma to Getty.

### a. The Zuma-NewSport Redirection Agreement

From 2010 until October of 2011, Zuma fed its photographs directly to Corbis, receiving royalty payments from Corbis at a rate of 40%. ECF No. 172, at 3. In October of 2011, Zuma began uploading its photographs, not to Corbis directly, but to Corbis via NewSport. *Id.* at 4. As part of this arrangement, Les Walker (on behalf of NewSport) and Scott McKiernan (on behalf of Zuma) signed a one-page document entitled "Request for Redirection of Royalty Payments," dated November 3, 2011 and addressed to Corbis. Bloom Decl. Ex. Y, ECF No. 111-25 (the "Redirection Agreement").

The Redirection Agreement requested that Corbis redirect to Zuma all royalty payments made under NewSport's two Image Representation Agreements with Corbis—an agreement dated December 14, 2004 and effective January 1, 2005 (Bloom Decl. Ex. F, ECF No. 111-6, hereinafter the "2004 NewSport-Corbis Agreement"), and an amendment to the 2004 NewSport-Corbis Agreement dated April 3, 2006 (Bloom Decl. Ex. G, ECF No. 111-7, hereinafter the "2006 Amendment," and together with the 2004 NewSport-Corbis Agreement, the "Original NewSport-Corbis Contract"), which provided for royalty payments at a 50% rate.[2]

---

[2] The Redirection Agreement refers to the 2004 NewSport-Corbis Agreement and 2006 Amendment as "Contract #9995 & 10944." ECF No. 111-25.

2

The Redirection Agreement states that it is "only a redirection of royalty payments; it is not an assignment of the [Original NewSport-Corbis] Contract." ECF No. 111-25. In the Redirection Agreement, "NewSport reaffirms . . . that all images produced under the [Original NewSport-Corbis] Contract shall be personally created by NewSport, or that NewSport has the authority to grant all rights and licenses under the [Original NewSport-Corbis] Contract[.]" Id.

Plaintiffs argue that the Redirection Agreement did not grant NewSport license authority.[3] I disagree. The Redirection Agreement unambiguously (i) redirects Corbis's royalty payments from NewSport to Zuma, and (ii) grants NewSport "authority to grant all rights and licenses under the [Original NewSport-Corbis] Contract." Id. In other words, NewSport authorized Zuma to receive, and directed Corbis to provide, royalties for images fed by Zuma to Corbis via NewSport, and Zuma authorized NewSport to grant Corbis license authority over such images. The Redirection Agreement's provision that it "is only a redirection of royalty payments [and] not an assignment of the [Original NewSport-Corbis] Contract," id., simply clarifies that Zuma did not step into NewSport's shoes with respect to the Original NewSport-Corbis Contract. That undisputed fact is entirely consistent with Getty's interpretation of the Redirection Agreement—that Zuma conveyed its license authority by means of a contract with NewSport, not with Corbis. The Redirection Agreement grants such license authority to NewSport "[n]otwithstanding the foregoing" non-assignment clause. Id.

---

[3] Plaintiffs also argue that they "have not conceded that all of the Photographs at issue were transmitted to Corbis under the Image Representation Agreements using a NewSport FTP Feed." Pls.' Br., ECF No. 256, at 34. But Plaintiffs cannot defeat summary judgment merely by refusing to concede a fact as to which Getty has adduced competent evidence. See, e.g., Eisenberg Decl., ECF No. 87, ¶ 12 (noting that photographs at issue were linked to a contract between NewSport and Corbis); id. at ¶ 15 (same).

3

b. **The NewSport-Corbis Agreements**

As discussed above, NewSport initially sublicensed photographs to Corbis pursuant to the terms of the Original NewSport-Corbis Contract, which provided for a 50% royalty rate. On March 2, 2012, NewSport and Corbis entered into a Representation Agreement, effective April 9, 2012, that reduced the royalty rate to 40%. *See* Bloom Decl. Ex. Q, ECF No. 111-17 (the "2012 NewSport-Corbis Contract"). Zuma continued to feed photographs via NewSport to Corbis after the 2012 NewSport-Corbis Contract went into effect. *See, e.g.*, 3d Walker Decl., ECF No. 253, at ¶ 21 ("Zuma Press continued to submit photographs to Corbis under the NewSport contract" after NewSport and Corbis entered into the 2012 NewSport-Corbis Contract).

Plaintiffs argue that (i) the Original NewSport-Corbis Contract "only grants Corbis the right to license to 'end-users,'" Pls.' Br., ECF No. 256, at 46 (quoting ECF No. 111-6, at 2), and (ii) the Original NewSport-Corbis Contract does not expressly permit sublicensing. *See Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) ("It is well established in . . . copyright law that a . . . copyright licensee may not sub-license his licensed intellectual property rights without express permission from the licensor.").

However, unlike the Original NewSport-Corbis Contract, the 2012 NewSport-Corbis Contract contained explicit language authorizing Corbis to sublicense content received under the contract. ECF No. 111-17, at COR 00018 ("The rights granted by you also include the right of Corbis to sublicense to and authorize Corbis' customers . . . to exercise the rights listed above[.]"). This sublicense authority was not limited to images fed to Corbis after the 2012 NewSport-Corbis Contract went into effect:

> You agree to provide Corbis access to your *existing* collection of images if they are available for licensing. Corbis may select particular images from the collection for representation as provided in this Agreement and subject to any pre-existing obligations that may exist for such images.

4

ECF No. 111-17, at COR 00024 (emphasis added); *see also id.* at COR 00020 § 2 ("Corbis and you agree that any materials . . . supplied by you to Corbis and accepted by Corbis . . . under any prior agreements . . . shall be deemed Accepted Images under this Agreement, and, except as specifically provided for to the contrary, all rights and obligations relating to such Accepted Images under such prior agreements shall be governed solely by the terms and conditions of this Agreement."). Since the Original NewSport-Corbis Contract did not prohibit sublicensing, the sublicense authority provided in the 2012 NewSport-Corbis Contract unambiguously extended to *all* photographs licensed to Corbis by NewSport, including images originating with Zuma.

Finally, the 2012 NewSport-Corbis Contract also authorized Corbis to "assign its rights and obligations under this Agreement to any Corbis affiliate or to any surviving party as part of a corporate reorganization, consolidation, merger, or sale." *Id.* at COR 00022 § 12.2.

c. **Corbis's Sale to Unity Glory and Unity Glory's License to Getty**

In January of 2016, Corbis sold its image portfolio to Unity Glory International Limited ("Unity Glory"); Unity Glory, through an affiliate, licensed Getty to distribute its content. Bloom Decl. Ex. S, ECF No. 111-19 (the "VCG Agreement").[4] Getty thereafter began the process of transferring—also known as "ingesting" or "migrating"—Corbis's content, including the Accused Images from Zuma, to Getty's database.[5]

Plaintiffs argue that Getty did not assume Corbis's contracts with NewSport as part of Getty's VCG Agreement with Unity Glory. *See* ECF No. 111-19, §§ 3.1, 3.4, 3.8. Once again, however, the question is whether the contract conveyed a *license*, this time from Unity

---

[4] Getty obtained the license through an affiliate, Getty Images (Tianjin) Video Company Limited, referred to in the agreement as "VCG."

[5] Prior to the migration, Getty also entered into a separate licensing agreement with NewSport. ECF No. 172, at 8.

5

Glory to Getty (through an affiliate), and clearly it did. *See id.* § 2.1 (granting Getty a license to all Unity Glory content, "including, without limitation, Corbis Content").

### d. Purported Termination of the Redirection Agreement

Plaintiffs also argue that the Redirection Agreement was terminated as of February 14, 2013, when McKiernan informed Seth Greenberg of Corbis that Walker "no longer works for Zuma" and that Zuma "no longer want[s] his personal sales going to ZUMA." 2d Liebowitz Decl. Ex. H, ECF No. 194-8, at ZUM00343. Plaintiffs, however, point to no evidence of an agreement between Zuma and NewSport to rescind NewSport's license authority under the Redirection Agreement. Getty, on the other hand, points to evidence to the contrary. *See* 2d Walker Decl., ECF No. 253, ¶ 29 ("Stewart and I also had some discussions about whether to transfer photographs that Zuma Press had transmitted to Corbis under the NewSport contract out of the NewSport collection. I did not think the terms Zuma Press was offering were reasonable, and *we did not come to an agreement*.") (emphasis added). All of the communications on which Plaintiffs rely relate not to NewSport's *license authority* over previously submitted images, but to the flow of *royalty payments*, either for previously submitted images or new submissions. Thus, even if the Redirection Agreement was terminated at some point before Getty's migration of the Accused Images, the licenses already granted to NewSport under the Redirection Agreement, and then passed to Corbis under the NewSport-Corbis agreements, remained valid.

Accordingly, when Getty ingested the Accused Images in 2016, it did so with the license authority that flowed from Zuma to NewSport via the Redirection Agreement, from NewSport to Corbis via the NewSport-Corbis agreements, and from Corbis to Getty via the Unity Glory purchase and VCG Agreement.

### CONCLUSION

For the reasons stated, Defendant's motion for summary judgment is granted and Plaintiffs' partial motion for summary judgment is denied. The Clerk shall enter judgment for

6

Defendant, with costs to be taxed by the Clerk. The Clerk shall close the open motions (ECF Nos. 192 and 257) and mark the case closed.

        SO ORDERED.

Dated:       July 1, 2019
              New York, New York           ALVIN K. HELLERSTEIN
                                             United States District Judge